IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JIMMY SANDERS, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:08-CV-369-MEF |
| | ) | |
| HOMECOMINGS FINANCIAL, LLC, | ) | (WO—Do Not Publish) |
| | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is presently before the Court on a Motion to Remand (Doc. # 9), filed by Plaintiff Jimmy Sanders ("Sanders") on June 25, 2008. Defendant Homecomings Financial, LLC ("Homecomings") removed this action from the Circuit Court of Lee County, Alabama pursuant to 28 U.S.C. §§ 1441, 1446 on May 19, 2008. Homecomings argues in the Notice of Removal (Doc. # 1-1) that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1367. After careful consideration of the applicable law and the arguments of counsel on the many issues raised by the motion to remand, the Court finds that the motion to remand is due to be GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an adjustable rate purchase money mortgage loan Homecomings issued to Sanders in March, 2005. The original value of the mortgage was $97,500.00. Two years after origination, the interest rate on the loan reset, and Sanders had trouble paying the amount due each month. The unpaid balance on the loan after acceleration

was $98,127.38.  Homecomings understood Sanders to be in default on the mortgage and instituted a non-judicial foreclosure action under the terms of the mortgage contract.  Upon learning of Homecomings' intention to exercise its right of sale under the contract, Sanders filed a complaint in the Circuit Court of Lee County, Alabama.  (Doc. # 1-2.) The complaint set out the factual predicate for the action and stated claims in eight counts.  Counts I through VII, respectively, asserted claims for: negligence, wantonness, unjust enrichment, "commission of certain acts and practices prohibited as unfair and deceptive,"[1] suppression, violation of the Alabama Extended Manufacturer's Liability Doctrine, and wrongful foreclosure.  Sanders seeks unspecified compensatory and punitive damages for these alleged wrongs.  A final count sought an ex parte temporary restraining order to prevent the impending sale of the Sanders home.[2]

On May 19, 2008, Homecomings removed the action to this Court invoking its subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1367. (Doc. # 1.)

---

[1] This count claims that certain enumerated actions of Homecomings are "instances of unconscionable conduct previously banned as unfair and deceptive by federal regulatory authorities under chapter 5 of the Federal Trade Commission Act and adopted by federal bank regulators." (Doc. # 1-2 ¶ 35.) This count also states that "Plaintiff lacked legitimate bargaining power, was not provided with adequate disclosures, . . . , was completely without meaningful choice." (Doc. # 1-2 ¶ 36.)  The count further alleges that the terms of the mortgage contract totally and completely favor Homecomings and that the contract is one of adhesion containing oppressive, one-sided, and patently unfair terms. (Doc. # 1-2 ¶¶ 37-39.) Because of this, Sanders seeks "all damages allowable under law as a result of defendant's unconscionable conduct in violation of unfair and deceptive acts and practices by the defendant." (Doc. # 1-2 ¶ 40.)

[2] The Circuit Court of Lee County granted the temporary restraining order prior to removal.

2

Homecomings argues the Court has jurisdiction over this case for several reasons.  First, Homecomings points to the section of the complaint labeled "JURISDICTION."  The first sentence in that section states "Jurisdiction is proper in the federal district court based upon diversity jurisdiction." (Doc. # 1-2 ¶ 3.)  That section also states: "this Court is authorized under its inherent powers to exercise supplementary jurisdiction over the common law claims of the plaintiff." (*Id.*)  Second, Homecomings argues that this Court has diversity jurisdiction under 28 U.S.C. § 1332, because there is no dispute as to the diversity of the citizenship of the parties,[3] and because the original value of the mortgage loan in question was $94,500.00, which is in excess of $75,000.00.  Finally, Homecomings argues that this Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367 because of the federal regulations discussed in Count IV, which is detailed supra at footnote one.

On June 25, 2008, Sanders filed a Motion to Remand (Doc. # 6), which is now under submission and ripe for disposition.

## DISCUSSION

### A. Legal Framework

Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994);

---

[3]  Sanders is a resident and citizen of the State of Alabama.  Homecomings is a Delaware corporation with its principal place of business in Minnesota.

*Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1076 (11th Cir. 1983).  As

such, federal courts only have the power to hear cases that they have been authorized to hear

by the Constitution and the Congress of the United States.  *Kokkonen*, 511 U.S. at 377.

When a case is originally filed in state court, a party may remove it if the case

originally could have been brought in federal court.  *See* 28 U.S.C. § 1441(a); *Lowery v.

Alabama Power Co.*, 483 F.3d 1184, 1207 (11th Cir. 2007), *cert. denied*, 128 S. Ct. 2877

(2008) (holding that "the party seeking a federal venue must establish the venue's

jurisdictional requirements" and that removing defendants bear that burden in the context of

a motion to remand).  The non-moving party may move for remand, however, which the

court should grant, if "it appears that the district court lacks subject matter jurisdiction."  *See*

28 U.S.C. § 1447(c).[4]  Because removal jurisdiction raises significant federalism concerns,

"removal statutes are construed narrowly; where plaintiff and defendant clash about

jurisdiction, uncertainties are resolved in favor of remand."  *Burns*, 31 F.3d at 1095.

Recently the Eleventh Circuit Court of Appeals provided significant clarification of

"existing principles of law governing removal generally—who bears the burden of

establishing that removal is proper, how that party can satisfy its burden, and how a district

---

[4]Under 28 U.S.C. § 1447, a plaintiff may move to remand the case, though if the motion is based on any ground other than subject matter jurisdiction the plaintiff must make such a motion within thirty days of removal.  Here, the motion to remand was filed more than thirty days after removal.  Because the motion is based on subject matter jurisdiction, the Court must nevertheless entertain the motion. *See* 28 U.S.C. § 1447(c) ("[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.")

court must proceed in evaluating its jurisdiction after removal." *Lowery*, 483 F.3d at 1187.

Although *Lowery* arose in the context of a removal pursuant to the Class Action Fairness Act

of 2005 ("CAFA"), it is plain from the text of *Lowery* that the holdings of the case are not

limited solely to cases removed under CAFA.  In *Lowery*, the Eleventh Circuit reiterated that

in cases such as this one, where the complaint does not specify the amount of damages

sought, "the removing party bears burden of establishing the jurisdictional amount by a

preponderance of the evidence."  483 F.3d at 1208-09, 1210.  The court cautioned, however,

that "[i]f the jurisdictional amount is either stated clearly on the face of the documents before

the court, or is readily deducible from them, then the court has jurisdiction.  If not, the court

must remand.  Under this approach, jurisdiction is either evident from the removing

documents or remand is appropriate."  Indeed, "in assessing the propriety of removal, the

court considers the documents received by the defendant from the plaintiff— be it the initial

complaint or a later received paper—and determines whether that document and the notice

of removal unambiguously establish federal jurisdiction." *Id.* at 1213.  The defendant and

the court may not speculate about the amount in controversy, nor should "the existence of

jurisdiction" be "divined by looking to the stars." *Id.* at 1215.  Importantly, the *Lowery* court

stated that it is

> highly questionable whether a defendant could ever file a notice of removal on
> diversity grounds in a case such as the one before us—where the defendant,
> the party with the burden of proof, has only bare pleadings containing
> unspecified damages on which to base its notice—without seriously testing the
> limits of compliance with Rule 11.  Unlike the typical plaintiff who originally
> brings a diversity action in federal court, the removing defendant generally will

have no direct knowledge of the value of plaintiff's claims.

*Id.* at 1215.  "When a plaintiff seeks unliquidated damages and does not make a specific demand, therefore, the factual information establishing the jurisdictional amount must come from the plaintiff." *Id.* at1215.

### B. Diversity Jurisdiction

Among the cases over which a federal district court may exercise subject matter jurisdiction are civil actions in which only state law claims are alleged if the civil action arises under the federal court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a).  The diversity statute confers jurisdiction on the federal courts in civil actions "between citizens of different states" in which the jurisdictional amount, currently in excess of $75,000, is met. *Id.*

The heart of the complaint is the unspecified damages Sanders seeks as a result of the mortgage contract and as a result of the alleged negligence, fraud, and coercion associated with the sale of the mortgage product to him by Homecomings.  Homecomings, however, argues that the $75,000.00 amount-in-controversy requirement is met because the original value of the mortgage was $94,500.00.  The Court disagrees.

First, the amount of the mortgage is not an issue with respect to the first seven counts because those counts seek damage for the wrongful conduct of Homecomings in connection with the original transaction. *See Horace v. LaSalle Bank Nat'l Ass'n*, 2009 WL 426467, *2 (M.D. Ala. Feb 17, 2009) (Thompson, J.).  The value of the mortgage loan has only the slightest relationship to the damage Sanders might have suffered due to Homecomings'

alleged misconduct in the sale of the loan to Sanders. Hence, the value of the mortgage loan gives little information about the amount in controversy under the first seven counts.

Additionally, the eighth count regarding the temporary restraining order cannot support jurisdiction even though the original value of the mortgage was in excess of $ 75,000.00. "[T]he value of the object of the litigation" is measured from the perspective of the plaintiff. *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 218 (11th Cir. 1997). "[T]he value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000). Here, Sanders' interest in the property is, as the very most, his equity in the home. Though the Court does not have direct evidence of Sanders' equity in the home, the balance due on the loan at the time Homecomings instituted foreclosure proceedings ($98,127.38) was *greater than* the original value of the loan ($97,500.00). This—together with the broad national trend of declining home values—suggests Sanders' interest in the home is an obligation, rather than an asset, because he would have to pay the balance due on the loan following foreclosure sale. In any event, the Court would have to speculate about the amount in controversy given only the facts before it.

There is nothing on the face of the complaint unambiguously stating how much Sanders seeks in damages, nor can the Court determine the amount in issue by looking at the

value of the underlying mortgage.[5]  A conclusion that more than $75,000.00 in controversy could only be supported by the kind of unguided speculation explicitly prohibited by *Lowrey*. Therefore, this Court cannot exercise jurisdiction pursuant to 28 U.S.C. § 1332.

## C. Federal Question Jurisdiction

Homecomings also argues that this Court has federal question jurisdiction under 28 U.S.C. § 1331.  This argument is based on citations in Count IV of the complaint to "chapter 5 of the Federal Trade Commission Act [as] adopted by federal bank regulators." (Doc. # 1-2 ¶ 35.)  This passing reference to a federal statute cannot support jurisdiction.

The complaint raises the specter of  federal law in the context of a muddied count that appears to both assert state law defenses to the mortgage contract in issue and affirmatively seek a remedy for conduct it casts as negligence or wantonness per se.  The Supreme Court has long recognized that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc., v. Draue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (citing *Hopkins v. Walker*, 244 U.S. 486, 490-91 (1917)).  This aspect of federal question jurisdiction ensures that the federal courts have the

---

[5]As stated above, the jurisdiction section of the state court complaint does contain language that seems to indicate Sanders was asserting this Court's jurisdiction.  Because it appeared to the Court that Sanders included this statement in the complaint inadvertently, the Court directed him to brief the issue of whether the inclusion of the statement was intended to invoke this Court's jurisdiction or whether it was an error. (Doc. # 17.)  After careful consideration of Sanders' response to the Court's Order (Doc. # 18), the Court is satisfied both that this statement was included inadvertently and that it cannot alone support jurisdiction.

last say on all substantial questions of federal law. *Id.*  Not all state law claims that involve federal law qualify, though.  The only state law claims that satisfy the "arising under" requirement are those that "really and substantially involve a dispute or controversy respecting the validity, construction, or effect of federal law." *Id.* (quoting *Shulthis v. McDougal*, 225 U.S. 561 (1912)).  Deciding whether a state law claim meets this standard "calls for a 'common-sense accommodation of judgment to [the] kaleidoscopic situations' that present a federal issue, in 'a selective process which picks the substantial causes out of the web and lays the other ones aside.'" *Id.* (quoting *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 117-118 (1936)).  Hence, federal question jurisdiction requires not only a contested federal issue, but "a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.*  Ultimately, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?" *Id.*  at 314.

A look at the whole of Count IV reveals its nature: it alleges that the mortgage contract in this case is unconscionable and is a contract of adhesion, and that Homecomings breached certain standards of care set by federal law.  The count begins by asserting that certain enumerated actions of Homecomings are "instances of unconscionable conduct previously banned as unfair and deceptive by federal regulatory authorities under chapter 5 of the Federal Trade Commission Act and adopted by federal bank regulators." (Doc. # 1-2 ¶ 35.) This is the

portion that appears to assert an affirmative claim for negligence or wantonness per se.  The count continues, however, with averments that "Plaintiff lacked legitimate bargaining power, was not provided with adequate disclosures, . . . , [and] was completely without meaningful choice." (Doc. # 1-2 ¶ 36.)  The count further alleges that the terms of the mortgage contract totally and completely favor the defendant and that the contract is one of adhesion containing oppressive, one-sided, and patently unfair terms; in short, that the contract is unconscionable. (Doc. # 1-2 ¶¶ 37-39.)  Because of this, Sanders seeks "all damages allowable under law as a result of defendant's unconscionable conduct in violation of unfair and deceptive acts and practices by the defendant." (Doc. # 1-2 ¶ 40.)

Sanders claims Count IV is one for negligence per se or wantonness per se.  The Court views the allegations as equally supportive of a defense to the enforceability of the contract—that the contract is unconscionable and was a contract of adhesion.  Because removal jurisdiction—and removal jurisdiction based on "substantial" federal questions embedded in state law claims—raises significant federalism concerns, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns*, 31 F.3d at 1095; *see Grable*, 545 U.S. at 312-14 (requiring an assessment of any disruption to established boundaries between federal and state judicial responsibilities when  exercising federal question jurisdiction in cases based  upon federal questions embedded in state law claims).  Sanders' passing reference to federal law,

as adopted by unnamed federal regulators,[6] is not sufficient to make jurisdiction clear on the face of the complaint. *Lowery*, 483 F.3d at 1213.  In fact, as the preceding discussion illustrates, all these references do is raise uncertainty about the nature of the claim asserted in Count IV.

It is hardly clear that this case is one that raises substantial federal questions and should be "picked from the web" and resolved with the advantages of a federal forum. *See Grable*, 545 U.S. at 312.  In fact, it is not clear to the Court that it could entertain the claim set out in Count IV without "disturbing any congressionally approved balance of federal and state judicial responsibilities" because the Federal Trade Commission Act does not provide a private right of action.  Allowing plaintiffs to bootstrap a claim for a violation of that act into a state law claim that can always be heard in federal court could upset the traditional balance of power between state and federal courts and belie Congress' intent. *See, e.g., Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 561 (2d Cir. 1978); *American Airlines v. Christensen*, 967 F.2d 410, 414 (10th Cir. 1992); *Helms v. Consumerinfo.com, Inc.*, 436 F. Supp. 2d 1220, 1235 (N.D. Ala. 2005).  While it is not obvious that this case should be "la[id] . . . aside,"

---

[6]In one portion of the complaint, Sanders does note that the group of federal financial regulators has adopted chapter 5 of the Federal Trade Commission Act.  Paragraph sixteen of the complaint trots out the acronyms for the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, the Office of Thrift Supervision, the Federal Reserve Board of governors, and other Federal Regulatory Authorities.  How these various financial sector regulators bear on the present action is not explained.  This scattershot list adds to, rather than detracts from, the uncertainty surrounding the nature of the federal question raised by Count IV.

*Grable*, 545 U.S. at 312, uncertainties are resolved in favor of remand.  *Burns*, 31 F.3d at

1095.  Consequently, because there is no certain basis to support federal jurisdiction in this

case, it is due to be remanded.[7]

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1.      Sanders' Motion to Remand (Doc. # 6) is GRANTED.

2.      This case is REMANDED to the Circuit Court of Lee County, Alabama.

3.      The Clerk is DIRECTED to take appropriate steps to effect the remand.

4.      Any pending motions are left for resolution by the state court.

DONE this the 29th day of April, 2009.

/s/ Mark E. Fuller
_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[7]Homecomings also claims that this Court can exercise supplemental jurisdiction over
the state law claims pursuant to 28 U.S.C. § 1367.  Supplemental jurisdiction is, of course,
dependant on the existence of federal question jurisdiction.  Therefore, in cases like this one
where federal question jurisdiction is lacking, the court cannot exercise supplemental
jurisdiction over related state law claims.  *See* 28 U.S.C. § 1367.